ILLINOIS TRUST & SAVINGS BANK v. KILBOURNE et al.

(Circuit Court of Appeals, Ninth Circuit.   October 5, 1896.)

No. 296.

APPEAL—PARTIES.
Where a decree gives priority to a certain claim against an insolvent corporation, the receiver thereof, and all creditors whose claims are subordinated, and who were parties to the suit, are necessary parties to an appeal, and their absence is fatal to it.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

The principal cause in the court below was a suit by the Illinois Trust & Savings Bank, as trustee of a first mortgage of the railway lines and other

property of the Seattle Electric Railway & Power Company, for the foreclosure of that mortgage. That suit was begun December 31, 1894. Prior thereto, to wit, June 14, 1893, one A. P. Fuller, an unsecured creditor, had commenced a suit against the Seattle Consolidated Street-Railway Company, the corporate successor of the Seattle Electric Railway & Power Company, in which suit a receiver of all of the property of the company was on the same day appointed, who thereupon took the property into his possession. On October 17, 1893, Fuller commenced a second suit against the Consolidated Company. After the execution of the mortgage to the complainant, Illinois Trust & Savings Bank, and before the institution of either suit by Fuller, one Annie Sears, together with her husband, Frank Sears, commenced a suit in the superior court of King county, Wash., against the Consolidated Company, to recover damages for personal injuries alleged to have been sustained by her on September 16, 1891, while a passenger on one of the company's railway lines, in which suit Mrs. Sears and her husband recovered, on March 24, 1892, judgment against the company for such damages in the sum of $15,000 and costs of suit. The Consolidated Company appealed from the judgment so given against it to the supreme court of the state of Washington, and, upon taking the appeal, in order to stay proceedings upon the judgment, it filed a supersedeas bond in the sum of $16,000, with eight sureties, namely, E. C. Kilbourne, Leilla S. Kilbourne, L. H. Griffith, Tina W. Griffith, V. Hugo Smith, Margaret Smith, J. S. Porter, and Hellen Porter, which bond was duly approved. Subsequently, and on November 18, 1893, the supreme court of Washington affirmed the judgment so appealed from, and gave judgment upon the appeal bond against the Consolidated Company and against the sureties on the bond, and each of them, in the sum of $16,000 (34 Pac. 918), upon which judgment a remittitur was issued directing the superior court to execute the judgment, which remittitur was duly entered in the court from which the appeal was taken. At the time of the recovery of the judgment by Mrs. Sears and her husband against the Consolidated Company, that company was in the receipt of a large revenue, and during the time the judgment was held in abeyance by the appeal therefrom and the supersedeas bond such receipts, over and above the operating expenses of the lines of railway of the company, were more than enough to satisfy the judgment. The defendants to the suit brought by the complainant for the foreclosure of the first mortgage, which was given to secure the payment of bonds in the sum of $381,000, besides the mortgagor company and its corporate successor, the Consolidated Company, included, among others, Annie Sears and her husband, Frank Sears, the Central Trust Company of the City of New York as trustee of a second mortgage upon the property to secure the payment of certain other bonds, and the three members of the law firm styled Thompson, Edson & Humphreys, who had recovered the judgment for Mrs. Sears, and who had filed notices that they claimed attorneys' liens thereon for certain contingent fees secured to them by contracts.

On June 6, 1895, the circuit court, in which was pending the foreclosure suit brought by the complainant, as also the two suits brought by Fuller, of its own motion entered an order consolidating them, and directing "that they shall henceforth proceed in all respects, both as to the causes themselves and as to any interventions pending or hereafter to be brought in any thereof, as one cause, under the title of 'Illinois Trust & Savings Bank, Trustee, vs. Seattle Electric Railway & Power Company; Seattle Consolidated Street-Railway Company; Central Trust Company of the City of New York, Trustee; Frank L. Waterman; Joseph E. Nichols; Annie Sears (alias Anna Sears), and Frank Sears, her husband; J. B. Maxon; William H. Thompson, Edward P. Edson, and John E. Humphreys, as co-partners under the style Thompson, Edson & Humphreys; George E. M. Pratt and William H. White, as co-partners under the style of Pratt & White; A. P. Fuller; Walker Todd; and F. T. Blunck (alias F. F. Blunck),'—and numbered 472 on the docket of the court." The order further directed that "M. F. Backus, the receiver of said property, heretofore appointed by said court in said cause No. 284 (Fuller vs. The Consolidated Company), do henceforth administer said property subject to the directions of the court from time to time to be given in said consolidated cause under the title aforesaid, for the benefit of such parties thereto, or other persons as the court shall from time to time find and decree to be entitled to

any of the benefits of said receivership; and that the directions heretofore given to said receiver by the court from time to time in said causes numbers 284 and 335, or either of them, shall remain in force until the further order of the court; and that the bond heretofore given by said receiver and filed in said cause number 284 shall stand in force as his bond as receiver in said consolidated cause." On March 2, 1895, Annie Sears and her husband, Frank Sears, and Thompson, Edson & Humphreys, filed their joint answer to the bill in the foreclosure suit brought by the Illinois Trust & Savings Bank, in which answer they set up the injury to Mrs. Sears; the recovery of her judgment therefor; the contracts with the attorneys for their fees; the Consolidated Company's appeal to the supreme court of the state of Washington; the filing of the supersedeas bond; the affirmance of the judgment, and its extension against the sureties; the nonpayment of the judgment; the insolvency of all of the sureties; the appointment of the receiver of the railway company's property prior to the rendition of the judgment on the supersedeas bond; the receipt by the railway company at the time Mrs. Sears recovered her judgment in the superior court of King county, Washington, and thenceforward while the judgment was superseded upon the appeal therefrom, of an income from its railway lines of about $15,000 per month; that those receipts were used in payment of operating expenses and interest on the indebtedness of the company, including the mortgage indebtedness to the complainant; that the amount so received by the company over and above the amount of the operating expenses was more than enough to have satisfied Mrs. Sears' judgment, with interest; and that the company, while the supersedeas was in force, wrongfully appropriated the income to the payment of interest on the mortgage indebtedness and other indebtedness, instead of paying off that judgment. The answer prayed that an accounting be had, and that out of the diversion of the company's income the judgment of Mrs. Sears be paid. To that answer a general replication was filed. On December 19, 1895, E. C. Kilbourne and Leilla S. Kilbourne, two of the sureties on the supersedeas bond, filed a petition in intervention in the foreclosure suit, entitled also in the suit of Fuller against the Consolidated Company in which the receiver was first appointed, which petition alleges the same facts as those set up in the answer of Mrs. Sears and husband and of their attorneys, except the allegations in respect to the contracts with the attorneys for their fees, and also alleges that immediately upon the rendition by the supreme court of the state of Washington of the judgment against the Consolidated Railway Company and its sureties proceedings were had before the court below at the instance and request of the railway company to have a receiver appointed to take charge of the company's property, and that the receiver herein was appointed accordingly; that the petitioners Kilbourne and wife, at their own expense, tried to resist the judgment against them on the supersedeas bond, and brought in the state court a suit for that purpose, which was finally decided against them, and expended money and incurred indebtedness in that effort for costs and attorneys' fees in the sum of $1,100, which has never been refunded to them; that they paid on the Sears judgment $700, which has never been refunded; that the whole of the judgment rendered on the supersedeas bond, with interest, except the payment of $700 so made by the petitioners, still remains due and unpaid, and a lien upon their property; that they have been harassed by threats of its collection out of their property, and that executions have been issued for that purpose, and that the judgment is a lien upon all of their real estate, and has placed it in such a position that they cannot sell or dispose of it, or prosecute their ordinary business in relation thereto: that the receiver and the Consolidated Railway Company have failed and refused to assist them in any manner to satisfy the judgment against them, except that the railway company has paid $100 thereon; that the railway company's stockholders whose subscriptions were unpaid have become insolvent, and were so at the time of the receiver's appointment, and that no part of the judgment can be made from them; that the petitioners received no consideration for joining as sureties in the supersedeas bond, but did so as an accommodation to the officers and agents of the railway company, and without any interest in the same; and that the judgment is an annoyance to them, and that they are unable to borrow money or sell property to satisfy it. The prayer of the petition is for an order re-

quiring the receiver to pay off the judgment, and also to pay the petitioners their expenses, and that receiver's certificates be issued for that purpose. On January 2, 1896, J. C. Porter and Hellen Porter, his wife, who were also sureties on the supersedeas bond, filed in the foreclosure suit brought by the Illinois Trust & Savings Bank their petition in intervention similar in all respects to that of the Kilbournes, and asking the same relief. On January 6, 1896, the receiver filed an answer to each of the petitions, similar in all respects to the answers of the complainant, Illinois Trust & Savings Bank, afterwards, and on January 16, 1896, filed to the petitions; both of which answers were substantially identical.

Complainant's answer to the petition in intervention of the Kilbournes denies that the receivership of the railway company's property was obtained at the company's expense or request, or with reference to the Sears judgment; alleges that between January 1, 1892, and June 13, 1893, the gross receipts of the company's lines were $187,822.75, the operating expenses $145,282.36, other current expenses of the company, for taxes, insurance, legal expenses, and accidents and damages, $13,086.93; interest accrued during the same period on unsecured indebtedness, $9,643.24, and on the first and second mortgage bonds, $75,050.50, of which there was actually paid during that period $35,208 interest on the first mortgage debt, but only $900 on account of the interest due on the second mortgage bonds, aggregating $600,000, on which no other interest has ever been paid; alleges that, in order to pay the first mortgage interest, the company was obliged to increase its floating debt by about $6,000, and that it did not divert its income to the construction of improvements, but allowed its plant, rolling stock, and tracks to deteriorate by reason of the lack of cash resources, and that during the period mentioned it had a heavy and continually increasing floating debt, which amounted to $98,000 when the receiver was appointed; and that at no time during said period was the entire property of the railway company worth more than the first mortgage debt, the accrued interest thereon, and the floating debt. It further alleges that since the receivership began only six months' interest on the first mortgage debt has been paid by the receiver, of which $10,000 was raised by the issuance and sale at a discount of receiver's certificates having a face value of $11,111.05; that the receipts and expenditures throughout the period mentioned were approximately in a ratable proportion for each month. The answer denies all the allegations in the petition relative to the company's income, and the use made of it, except so far as they are consistent with the statements made in the answer. The answer puts in issue the averments of the petition in intervention in respect to the amount expended by the petitioners in efforts to resist the judgment on the supersedeas bond, and as to the amount paid by them on the judgment, and as to their having been harassed by the judgment, and prevented thereby from prosecuting their ordinary business, and as to the insolvency of the company's stockholders. It alleges that at the time of signing the supersedeas bond the petitioner E. C. Kilbourne was treasurer of the railway company, and that all the sureties were officers or trustees of the company (each wife signing the bond having signed at the instance and request of her husband, in order to make it a valid and binding obligation as against their community property), and that all of the officers except Kilbourne, who was treasurer, and Porter, who was a member of the board of trustees, were salaried, and that they all signed the bond not merely for accommodation, but in order to assist and sustain the credit of the corporation, in whose solvency and financial success they were interested. The answer further avers that the petitioners in intervention have no equity for the payment of the judgment out of the funds of the receivership in order to indemnify and discharge them from liability thereon as against the mortgage bond holders; that the receiver has not, and at no time since the receivership has had, any net income which could properly be applied to the payment of the demand except in derogation of the rights and claims of other creditors of the receiver and of the bondholders; that since the receivership began he has issued and sold under orders of the court receiver's certificates to the amount of $80,000 in addition to those for $11,111.05, already mentioned, to raise money for the purpose of making needed improvements and repairing loss and damage by fire to the company's plant, rolling stock, and lines, and that it is impossible at present to raise $15,000, and interest on the judgment, by the

issue of receiver's certificates in addition to those already outstanding and to the first mortgage debt on the property, and that the issue of receiver's certificates to pay the judgment would be in derogation of the rights of the holders of the mortgage bonds and outstanding receiver's certificates. The answer prays for a dismissal of the petition in intervention, and for costs against the petitioners.

No reply to the answer was filed. The hearing was had, as recited in the decree appealed from, upon the petitions in intervention, the answers thereto (which, by stipulation of the respective parties, included separate answers to each of the petitions in intervention) by the receiver, by the Seattle Electric Railway & Power Company, and by its corporate successor, the Seattle Consolidated Street-Railway Company, and by the Central Trust Company of the City of New York, all of which three last-named parties adopted, by stipulation, the answers of the receiver to the petitions in intervention; and upon the bill of complaint of Fuller against the Consolidated Company, the petition for the appointment of the receiver, the order appointing the receiver, the order consolidating the causes, the bill of complaint in the foreclosure suit of the Illinois Trust & Savings Bank, and the petitions and orders for the issuance of receiver's certificates.

Thomas R. Shepard and Charles E. Shepard, for appellant.

James Hamilton Lewis, W. H. Thompson, E. P. Edson, and John E. Humphreys, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

One of the ordinary rules respecting appeals is that all parties to the record who appear to have any interest in the order or judgment challenged must be given an opportunity to be heard on such appeal. The reasons for the rule are fully stated in Masterson v. Herndon, 10 Wall. 416, and restated in Hardee v. Wilson, 146 U. S. 179–181, 13 Sup. Ct. 39, 40. Turning to the decree appealed from, it is seen that the court below allowed the claim of the intervening petitioners to the extent only of the principal sum of the Sears judgment—$16,000—and the costs of that action taxed in the supreme court of the state of Washington, amounting to $36, but without interest, and without the allowance of any of the expenses of the subsequent litigation alleged by the intervening petitioners to have been incurred by them in resisting the enforcement of that judgment; all of which the intervening petitioners claimed. The claim of the petitioners, to the extent that it was allowed by the court below, the decree directs the receiver to pay next after the payment of the receiver's certificates, amounting to $80,000, with interest thereon, issued under the orders of the court for the betterment of the property and "co-equally with any liabilities and expenses of the receivership and of the operation of said railway company's property by the receiver now or hereafter to be incurred, and prior to all indebtedness of said company secured by the mortgages to the complainant Illinois Trust & Savings Bank and Central Trust Company of the City of New York, respectively, and prior to all unsecured debts of the company, and also the certificates issued in December, 1893, for six months' interest upon the $381,000 bonds secured by the first mortgage to the complainants."

Notwithstanding the fact that the receiver was thus directed to pay $16,036 on the Sears judgment prior to the payment by him of any part of the indebtedness secured by either the first or second mortgage, and prior to all unsecured debts of the railway company, including the indebtedness to Fuller, yet neither the Central Trust Company of the City of New York, holder of the second mortgage, nor Fuller, nor the receiver was in any way made a party to the appeal. The receiver himself asked to be allowed to appeal, which petition the court below denied on the ground that it appeared "that the complainant desires and intends also to appeal from said decision, and that it is unnecessary for the receiver to appeal." Upon that ground the court below denied the petition of the receiver, but, in the language of the order of denial, "without prejudice to the right of the complainant or any other party therein who is interested and adversely affected by said order to appeal therefrom; and the complainant or any such other party is hereby allowed to appeal separately from said order allowing said claim and requiring the receiver to pay the same in the manner stated in said order." The receiver made no other application to be allowed to appeal, but the complainant in the foreclosure suit brought the appeal now here, serving therewith only Annie and Frank Sears, Thompson, Edson & Humphreys, Kilbourne and wife, and Porter and wife; and to those parties only was the citation addressed. The receiver was clearly entitled to be heard upon the question as to whether there should be any change in the decree. So, also, were the holder of the second mortgage upon the property, and the unsecured creditors, whose claims were, by the decree appealed from, subordinated to the Sears judgment to the extent of $16,036. But that amount was not the limit of the claim of the intervening petitioners, and the setting aside of the decree appealed from might result in a larger allowance to those petitioners, and a corresponding decrease in what the holder of the second mortgage and the unsecured creditors may receive. Manifestly, therefore, those parties to the record were necessary parties to the appeal, and their absence is fatal to it. Davis v. Trust Co., 152 U. S. 590, 14 Sup. Ct. 693; Sipperley v. Smith, 155 U. S. 86, 15 Sup. Ct. 15. Appeal dismissed.