ILLINOIS TRUST & SAVINGS BANK v. SEATTLE ELECTRIC RAILWAY & POWER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 19, 1897.)

No. 368.

RAILROAD MORTGAGES — VALIDITY AS TO PERSONALTY — AFFIDAVIT OF GOOD FAITH.

A railroad corporation of the state of Washington executed in 1890 a mortgage or deed of trust of all the real estate and personal property then owned by it, or thereafter to be acquired. Thereafter S. secured a judgment against the company, which was affirmed on appeal. In a suit to foreclose the mortgage, persons interested in that judgment were made parties, and claimed a preference over the mortgage debt. By 1 Hill's Code Wash. § 1648, a mortgage of personal property is declared void, as

against creditors, unless accompanied by a specified affidavit of good faith. No such affidavit accompanied the trust deed in question. *Held*, that in connection with article 12, § 17, of the constitution of Washington, providing that rolling stock and other movable property of a railroad corporation shall be considered personal property, and shall be liable to execution and sale in the same manner as the personal property of individuals, and 1 Hill's Code Wash. § 1646, authorizing mortgages upon all kinds of personal property of a railroad company, the failure of the trust deed to contain the affidavit rendered the mortgage void as to the personal property, and that to that extent the S. judgment was superior to the lien of the trust deed, and that this result was not affected by 1 Hill's Code Wash. § 1500, empowering private corporations generally to mortgage real and personal property.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Thos. R. Shepard, for appellant.
Geo. E. De Steiguer, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.    The appellant brought suit in the circuit court for the district of Washington on December 31, 1894, against the Seattle Electric Railway & Power Company, the Seattle Consolidated Street-Railway Company, the Central Trust Company of the City of New York, and a number of other defendants, to foreclose a mortgage or deed of trust executed by the first-named defendant on March 15, 1890, in favor of the appellant, to secure the payment of the principal and interest of $400,000 of bonds, of which amount bonds aggregating the sum of $381,000 were issued.    Among the parties made defendants were Annie Sears and Frank Sears, her husband.    It is alleged in the bill that these defendants were judgment creditors or claimants of a lien upon a judgment for the sum of $16,000 in their favor in the state court of Washington, but that no lien had been acquired in their favor upon any of the mortgaged property, except by the entry and docketing of the judgment on June 16, 1893, in the execution docket in the office of the clerk of the superior court of King county, Wash.    The bill sets forth a judgment in favor of these defendants in the superior court of King county, dated March 29, 1892, and a judgment by way of affirmance in the supreme court of the state, dated June 16, 1893, and a final judgment of affirmance in the supreme court of the state for $16,000, rendered November 20, 1893, as of date June 16, 1893.    It is also averred that William H. Thompson, Eduard P. Edsen, and John E. Humphries, as co-partners under the style of Thompson, Edsen & Humphries, and George E. M. Pratt and William H. White, as co-partners under the style of Pratt & White, claim certain attorneys' liens on this last-named judgment, and that J. B. Maxon also claims a lien on the judgment by way of an assignment.    At the time this bill was filed in the circuit court, on December 31, 1894, the property of the Seattle Consolidated Street-Railway Company, as the corporate successor of the Seattle Electric Railway & Power Company, was in the hands of M. F. Backus, a receiver appointed by the circuit court in two cases,—one brought by A. P. Fuller against the Seattle Consolidated Street-Railway Company, commenced

June 14, 1893, in which the receiver was appointed on the same day, and two days prior to the entry of the Sears judgment in the supreme court of the state, and the other brought by the same plaintiff against the same company and the Illinois Trust & Savings Bank, trustee, and the Central Trust Company of New York, commenced October 17, 1893. By an order of court entered June 6, 1895, all three cases were consolidated under the administration of the receiver appointed in the first case.

From the answers of the defendants Frank and Annie Sears, and the other parties claiming interests in the Sears judgment, it appears that on the 16th day of September, 1891, while Annie Sears was a passenger upon one of the street cars operated by the Seattle Consolidated Street-Railway Company, the corporate successor of the Seattle Electric Railway & Power Company, the car in which Mrs. Sears was riding ran off the track, and she was seriously and permanently injured; that thereafter she and her husband brought suit in the superior court of King county, Wash., against the company, to recover damages for the injury; that on the 29th day of March, 1892, they recovered a judgment for $15,000 and costs of suit; that the company appealed the case to the supreme court of the state, and in order to stay proceedings, and for a supersedeas, filed a supersedeas bond, in the sum of $16,000, with E. C. Kilbourne, Leilla S. Kilbourne, L. H. Griffith, Toney W. Griffith, V. Hugo Smith, Margaret Smith, J. S. Porter, and Helen Porter as sureties; that on the 18th day of November, 1893, the judgment was affirmed by the supreme court of the state, and a judgment rendered on the supersedeas bond against the principal and sureties in the sum of $16,000. It is alleged in the answer that at the time Mrs. Sears recovered her judgment in the superior court of King county, and thereafter, while the judgment was superseded upon the appeal thereon, the street-railway company was in receipt of an income from its railway lines of about $15,000 per month; that such receipts were used in payment of operating expenses and interest on the indebtedness of the company, including the mortgage indebtedness to the complainant; that the amount so received by the company over and above the amount of the operating expenses was more than enough to have satisfied the Sears' judgment, with interest; and that the company, while the supersedeas was in force, wrongfully appropriated the income to the payment of interest on the mortgage indebtedness and other indebtednesses, instead of paying off the judgment. It is also alleged in the answer, in support of the priority of this judgment over the mortgage lien, that the trust deed and mortgage mentioned in the bill of complaint did not contain the affidavit provided for chattel mortgages in the state of Washington, to the effect that the mortgage was made in good faith, and without any design to hinder and delay or defraud creditors. The answer prayed for an accounting, and that out of the diversion of the company's income the claim and judgment in favor of Frank and Annie Sears be first paid. To this answer a general replication was filed. Among the intervening petitions for preferential claims filed in the case is one by E. C. Kilbourne and Leilla S. Kilbourne, sureties on the supersedeas bond given in the state court to stay proceedings on the Sears judgment, filed in the cir-

cuit court December 19, 1895.    This petition prays that the amount of the judgment, together with interest and costs, in favor of Frank and Annie Sears, be paid off and satisfied, to the end that the petitioners might be relieved from the said judgment.

The appellant, the Illinois Trust & Savings Bank, filed its answer to this petition, setting forth the income and disbursements of the corporation in detail.    The answer prayed for a dismissal of the petition, and for costs against the petitioners.    No reply to this answer was filed.    No proofs were made, and the hearing was had upon the petition in intervention, the answers thereto, the bill of complaint in the cause, and the various orders and proceedings therein. The court below on January 18, 1896, entered an order and decree upon this petition; allowing the claim of the petitioners as preferred, and directing it to be paid by the receiver out of the funds of the receivership and proceeds of the property of the Seattle Consolidated Street-Railway Company next after the payment of an issue of receiver's certificates amounting to $80,000, for repairs, etc., and prior to the indebtedness of the company secured by the mortgage of the Illinois Trust & Savings Bank, and to the Central Trust Company of the City of New York.    It was further ordered that the receiver issue and deliver receiver's certificates to the various parties interested in the Sears judgment for the amounts of their respective interests, and that the receiver should pay and take up said certificates, when he should come into the possession of funds properly applicable thereto, out of the proceeds of the sale of the property of the Seattle Consolidated Street-Railway Company, or otherwise, and when he should be directed so to pay and take up said certificates by the further order or decree of the court.    From this order and decree an appeal was taken to this court.    The appeal was heard and dismissed on the ground that the receiver and certain creditors other than Frank and Annie Sears had not been made parties to the appeal, that they were necessary parties, and that their absence was fatal to the hearing of the case on appeal.    A full statement of the material facts of the case, and of the various proceedings that took place in the court below up to the entering of the order and decree of January 18, 1896, will be found in the statement of the case made by this court upon the motion to dismiss this first appeal. 22 C. C. A. 599, 76 Fed. 883.

It appears that pending the appeal to this court from the order and decree of January 18, 1896, the foreclosure suit proceeded to a final decree of foreclosure of the appellant's mortgage, which was entered on May 20, 1896.    Under this decree, the property of the Seattle Consolidated Street-Railway Company was, on December 1, 1896, sold for $139,601.    The sale was confirmed by an order entered on December 24, 1896.    The purchase price was thereupon paid into court, and the master's deed issued to the purchasers, who, on December 31, 1896, entered upon and took possession of the property. In section 6 of this decree of May 20, 1896, it was adjudged that the appellant's mortgage or deed of trust was the proper act and deed of the Seattle Electric Railway & Power Company, by it authorized,

made, and delivered, in all respects, in conformity with law, and was a valid conveyance for the purposes therein stated, but that the mortgage or deed of trust did not contain or have appended thereto the affidavit provided for chattel mortgages in the state of Washington, to the effect that the mortgage was made in good faith, and without any design to hinder, delay, or defraud creditors; and in section 15 and in paragraph 3 of section 21 of this decree the question whether or not the Sears judgment was entitled to a preference over the appellant's mortgage lien was reserved for adjudication at or after the confirmation of the sale directed by the decree, or in case the decree awarding preference to said claim should be affirmed on the then pending appeal to this court. The decree, so far as it related to the Sears judgment and the Kilbourne petition of intervention, was based upon a stipulation of the parties that all the allegations of fact contained in the appellant's bill of complaint were true; expressly excluding from the scope of the admission and stipulation, however, any and all allegations or conclusions of law set forth in the bill of complaint, and particularly the claim of priority of the lien of the mortgage over the lien of the judgment in favor of Annie Sears and Frank Sears, her husband. After the appeal from the decree of January 18, 1896, was dismissed by this court, but shortly before the mandate on the dismissal was filed in the court below, that court, by a decree dated February 15, 1897, amended and supplemented the decree of May 20, 1896, with respect to the Sears judgment, and provided for its allowance and payment out of the proceeds of the sale of the property, and provided further that:

"This allowance shall occupy the same position, and be entitled to the same priority, and take the same rank, in every respect, as the decree heretofore entered on the ——— day of January, 1896, on the petitions of Kilbourne et al., for the allowance and payment of the same judgment; and said judgment is, and shall be, a prior lien upon all the property and assets mentioned in said mortgage of the plaintiff, and this adjudication of priority of said judgment of said Sears over the mortgage indebtedness of plaintiff in this case shall be subject to the right of appeal which may exist therefor."

It is from this last decree that the present appeal is prosecuted, wherein the receiver and other necessary parties have been joind.

The mortgage or deed of trust involved in this case was executed March 15, 1890, by the Seattle Electric Railway & Power Company, a corporation organized under the laws of the state of Washington, and conveyed to the Illinois Trust & Savings Bank, trustee, certain described real estate in the city of Seattle, state of Washington, together with the buildings thereon, and also all the buildings, roadbed, tracks, machinery, railway plant, engines, boilers, dynamos, electrical machines, electric motors, and other electrical apparatus, rolling stock, cars, poles, lines, and rails, of whatever description, and wherever situated, including all the rights, privileges, and franchises of the company. It was further declared that it was the intention and meaning of the instrument to embrace thereunder, and subject to the lien therein provided, all the real estate and personal property, rights, and privileges that might be thereafter acquired, as well as that then owned by the mortgagor.

The constitution of the state of Washington (article 12, § 17) provides:

"The rolling-stock and other movable property belonging to any railroad company or corporation in this state, shall be considered personal property and shall be liable to taxation and to execution and sale in the same manner as the personal property of individuals, and such property shall not be exempted from execution and sale."

It is contended by the appellees that under this constitutional provision a large part of the property described in the mortgage or trust deed is personal property, and subject to the law of the state relating to chattel mortgages.

Section 1646 of the Statutes of Washington (1 Hill's Code) provides as follows:

"Mortgages may be made upon all kinds of personal property and upon the rolling stock of a railroad company and upon all kinds of machinery, and upon boats and vessels, and on growing crops and on portable mills and such like property."

Section 1648 of the same Statutes (1 Hill's Code) provides as follows:

"A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchasers, and incumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property."

The decree of May 20, 1896, found that appellant's mortgage or trust deed did not contain, or have appended thereto, the affidavit required by the last section. In Hammock v. Trust Co., 105 U. S. 77, the supreme court held that the provisions of the statute of Illinois in relation to chattel mortgages did not apply to mortgages by a railway corporation in connection with its real estate and franchises, and including personal property used and appropriated for railroad purposes. And in Southern Cal. Motor-Road Co. v. Union Loan & Trust Co., 29 U. S. App. 110, 12 C. C. A. 215, and 64 Fed. 450, this court held that a statute of California, relating to chattel mortgages, similar to that of Washington, did not apply where the mortgage of a railroad company covers personal property in connection with real estate and corporate franchises. But in both of these cases the exception was based upon the provisions of statutes conferring upon railroad corporations organized or incorporated under the laws of the state for public purposes the power to mortgage their franchises and real and personal property as an entirety. In the last case cited, Judge Hawley, speaking for the court, said:

"In all of the decisions which hold that the locomotives, engines, and other rolling stock of a railroad are subject to the provisions of the act relating to chattel mortgages, it is conceded, if the question is referred to, that, if there is an independent statute of the state authorizing railroad companies to mortgage their corporate property and franchises to secure the payment of their bonds, the chattel mortgage act would not be applicable, because it must be, and is, universally acknowledged that it is within the power of the legislature of a state to regulate the mode and prescribe the manner in which the real and personal property within the state may be conveyed or mortgaged."

It was accordingly held that section 456 of the Civil Code of California, authorizing railroad corporations, for the purpose of constructing and completing their roads, to mortgage their corporate property and franchises, was such an independent statute, and under its authority the mortgage of a railroad company, covering personal property, real estate, and corporate franchises, created a valid and binding lien on the entire property of the corporation, and the provisions of the chattel mortgage act had no application to such a mortgage. A similar statute in Illinois was referred to by the supreme court in Hammock v. Trust Co., supra, as authority for a railroad corporation to mortgage its franchises and property as an entirety, and relieving such a mortgage from the operation of the local statutes relating to the redemption of real estate, and a statute providing a limitation of two years for the possession of mortgaged personal property by the mortgagor under certain conditions. We find, however, no such independent statute in Washington, conferring upon railroad corporations organized and incorporated in that state the right to mortgage all their corporate property and franchises as an entirety. Section 1500 of the General Statutes of Washington (1 Hill's Code) enumerates the powers of private corporations generally, and provides, among other things, that they shall have power "to purchase, hold, mortgage, sell and convey real and personal property." To hold that this general enabling statute, passed for the benefit of all corporations alike, is sufficient to exempt the mortgage of a railroad corporation, covering both real and personal property, from the requirements of a special statute relating to chattel mortgages, would, in our opinion, enlarge the scope of the doctrine in Hammock v. Trust Co. beyond its true purpose and meaning, and introduce confusion and uncertainty into the law relating to personal property; and this we are not prepared to do, in view of the provision of the constitution of the state that the personal property of a railroad company shall be liable to execution and sale in the same manner as the personal property of individuals. Const. art. 12, § 17. In Radebaugh v. Railroad Co., 8 Wash. 570, 36 Pac. 460, the supreme court of Washington considered the authority of Hammock v. Trust Co., and held that it was not applicable to the statute of Washington, and that, with respect to the rolling stock of a railroad company, it was the intention of the legislature to place it on the same footing as other personal property, and that a mortgage executed and recorded as a real-estate mortgage, which did not comply with the formalities required in the execution of a chattel mortgage, did not bind such property. This is the law prevailing in New York. Hoyle v. Railroad Co., 54 N. Y. 314; Vilas v. Page, 106 N. Y. 439, 13 N. E. 743. The failure of the trust deed to contain the affidavit required for a chattel mortgage in the state of Washington rendered the mortgage void as to the personal property, and to that extent the Sears judgment is superior to the lien of the trust deed. This determination renders unnecessary the consideration of other questions contained in the record and discussed by counsel. The decree of the circuit court is affirmed, with costs.